UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEIKO EPSON CORPORATION,<br><br>  Plaintiff,<br><br>  v.<br><br>CORETRONIC CORPORATION and OPTOMA TECHNOLOGY, INC.,<br><br>  Defendants.<br>_____/ | No. C 06-06946 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Request for Clarification** |

    On May 16, 2008 this court issued a claim construction order in the above-captioned action construing terms from, *inter alia*, U.S. Patent No. 6,739,831 ("the '831 patent"). <u>See</u> Docket No. 183. On May 22, 2008 plaintiff sought clarification of the court's construction of the term "second exhaust fan," which is used in the '831 patent. <u>See</u> Docket No. 185. The court construed this term as "fan, in addition to one other fan somewhere else in the projector, at the end of the cooling path for drawing air out of the projector." Plaintiff now seeks clarification as to whether the "other fan somewhere else in the projector" must be an exhaust fan. Based on two independent reasons, the court holds that this "other fan" (also referred to as the "first fan") must be an exhaust fan.

    First, the court must "indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning." <u>CCS Fitness, Inc. v. Brunswick Corp</u>., 288 F.3d 1359, 1366 (Fed. Cir. 2002). Since the ordinary and customary interpretation of "second exhaust fan" implies the existence of a "first exhaust fan," this court finds that the "other fan" above must be an exhaust fan. The patentee could have easily employed claim language that taught "a second fan that exhausts" if she did not

1  intend for this limitation to be placed on the first fan.  Since the patentee did not use language to this
2  effect, the court will not conjecture as to the patentee's intended meaning, but interprets the term
3  according to its ordinary and customary meaning.

4     Second, the patent specification compels this result.  Although the patent claims do not
5  discuss the first fan, the description of the prior art in the patent specification sheds light on the
6  issue.  The specification states that the problem to be solved involves the fourth hot current.  The
7  fourth hot current is formed when the first hot current splits into the third hot current and the fourth
8  hot current.  '831 patent at 1:19–22.  "The third hot current 155 passing a first fan 157 and fan
9  blades 1572 is exhausted out of the projector 10 . . . ."  Id. at 1:22–24.  This action, whereby the
10 current is exhausted out of the projector via the first fan, demonstrates that the first fan is an exhaust
11 fan.  Subsequently, "[d]ue to the action of the second fan 158, the fourth hot current 156 directed
12 through the third fan 162 into the light source heat exhausting unit 16 passes an air duct 161 to
13 absorb the heat generated by the light source 121, so the temperature of the fourth hot current 156
14 rises rapidly."  Id. at 1:33–37.  It is the ill effects of this fourth hot current that the patent purports to
15 alleviate.  Seemingly, then, the problem to be solved is created by the presence of two *exhaust* fans.
16 Consequently, "second exhaust fan" requires another exhaust fan somewhere else in the projector.[1]

17     IT IS SO ORDERED.

Dated: May 29, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

## **ENDNOTES**

1. The court notes that it is not incorporating a limitation from the patent specification into the construction of this term. The claim limits itself by using the phrase "second *exhaust* fan." The specification is referred to because it provides intrinsic evidence supporting the court's interpretation.