1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SEIKO EPSON CORPORATION

       Plaintiff,

  v.

CORETRONIC CORPORATION and
OPTOMA TECHNOLOGY, INC.

       Defendants,

_____/

No. C 06-6946 MHP

<u>**MEMORANDUM & ORDER**</u>

**Re:  Defendants' Renewed Motion for
Summary Judgment of Invalidity &
Plaintiff's Motion to Strike**

      Plaintiff Seiko Epson Corporation brought this action against defendants Coretronic Corporation and Optoma Technology, Inc., alleging infringement of several United States patents. On May 15, 2009, the court granted defendants' motion for summary judgment, invalidating several claims of U.S. Patent No. 6,203,158 ("the '158 patent") and U.S. Patent No. 6,527,392 ("the '392 patent"), both owned by plaintiff.  The United States Court of Appeals for the Federal Circuit vacated the court's judgment of invalidity as to the '158 patent and remanded for further proceedings. *Seiko Epson Corp. v. Coretronic Corp.*, 376 Fed. Appx. 23 (Fed. Cir. 2010).  Now before the court is (1) defendants' renewed motion for summary judgment of invalidity as to claims 1, 2 and 5 of the '158 patent on the grounds of obviousness and (2) plaintiff's motion to strike defendants' revised final invalidity contentions and corresponding portions of defendants' summary judgment brief.  Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following order.

United States District Court

For the Northern District of California

BACKGROUND

The patent at issue concerns projectors. Projectors may use a high-brightness light source inside a casing to generate light. The light is modulated to create images. High-brightness light sources generate significant amounts of heat. Plaintiff's '158 patent claims improvements to projector designs that increase the effectiveness of projector cooling. The '158 patent was filed on July 29, 1999, as a continuation of U.S. Patent Application 08/943,730, filed on October 3, 1997. *See* Docket No. 402 (Biber Dec.), Exh. B. The '158 patent issued on March 20, 2001. *See id.* It "describes a projector that conducts air from outside the projector directly through the power unit in order to cool it more effectively." *Seiko Epson*, 376 Fed. Appx. at 24.

The asserted claims are claims 1, 2 and 5. Coretronic moves for summary judgment of invalidity on each of these claims. Claims 1 and 5 are independent claims. Claim 1 reads as follows:

1. A projector, comprising:

an optical unit including a light source lamp and a projection lens, the optical unit forming an optical image in response to image information by optically treating light beams emitted from the light source lamp and expansively projecting the optical image through the projection lens;

a power unit including a ventilating path provided inside the power unit for circulating air;

an outer case that stores the optical unit and the power unit;

a first cooling air intake port located on the outer case that provides cooling air from outside of the outer case to the optical unit; and

a second cooling air intake port located on the outer case that directly conducts cooling air from the outside of the outer case to the ventilating path, said second cooling air intake port comprising:

an inlet provided on the power unit, and

a duct connecting said second cooling air intake port and the air inlet.

'158 patent at 15:25-47. Independent claim 5 reads as follows:

5. A projector, comprising:

an optical unit including a light source lamp and a projection lens, the optical unit forming an optical image in response to image information by optically treating light

2

beams emitted from the light source lamp and expansively projecting the optical image through the projection lens;

a power unit including an air inlet and an air outlet;

an outer case that stores the optical unit and the power unit;

a first cooling air intake port located on the outer case that provides cooling air from outside of the outer case to the optical unit;

a second cooling air intake port located on the outer case that directly conducts cooling air from the outside of the outer case to the air inlet; and

an exhaust vent provided on the outer case that directly conducts air exhausted from the air outlet to the outside of the outer case.

*Id.* at 16:10-31.  In its May 16, 2008 claim construction order, the court construed the phrase "directly conducts cooling air" to mean "transmits cooling air without [increasing] its temperature to that of the air inside the outer casing of the projector."  *See* Docket No. 183 at 24.  The court modified plaintiff's proposal that the phrase mean "transmits cooling air without substantial contamination by internal sources of heat," because the patent's advance over the prior art was to cool the power supply with fresh air that is cooler than the air in the outer case of the projector, and plaintiff's construction was not limited to the air's temperature. *Id.* at 19.

On May 15, 2009, the court granted Coretronic's motion for summary judgment of invalidity regarding the '158 patent.  Docket No. 373.  It found that a prior art Japanese patent application, "Nakamura," disclosed each and every limitation of claims 1 and 2 of the '158 patent.  Nakamura teaches a projector design with an embodiment containing two separate air inlets and one exhaust vent.  Air from the first inlet passes through several projector components before combining with fresh air pulled in through the second inlet and cooling the power supply. *Id.* at 10.  The court also held that claim 5 was obvious as a matter of law in light of Nakamura.  Although Nakamura arguably lacked an "exhaust vent provided on the outside case that directly conducts air exhausted from the air outlet [of the power supply] to the outside of the outer case," the court determined that "there are a limited number of components requiring cooling inside a projector casing, and such a casing can contain only so many prior art passageways." *Id.* at 16.

United States District Court

For the Northern District of California

On appeal, the Federal Circuit disagreed with the court's construction of the phrase "directly conducts cooling air" and agreed with plaintiff that "air from outside of the case must be conducted directly to the power unit without substantial contamination by the air inside the case." 376 Fed. Appx. at 24-25. "Cooling air" does not refer to any form of air that is cooler than the air in the outer case but more specifically to "fresh air" brought in from the exterior of the projector case. *Id.* at 25. The Federal Circuit further held that Nakamura failed to satisfy this narrow construction:

> Although Nakamura teaches a second air intake port located in the vicinity of the power unit, it does not provide an uninterrupted path from that port to the power unit. Instead, the figures in the Nakamura reference indicate that the fresh air entering through the second air intake port mixes with ambient air from inside the case before reaching the power unit. Consequently, the fresh air entering through the second air intake port is not directly conducted to the power unit as required by the '158 patent.

*Id.* at 25. The court did not address any other aspects of the court's '158 ruling. The Federal Circuit vacated this court's judgment as to the '158 patent, but it did not "rule out the possibility that other prior art, standing alone or in combination with the Nakamura reference, might sustain the district court's finding of invalidity." *Id.*

On October 4, 2010, defendants filed a renewed motion for summary judgment of invalidity based upon the Federal Circuit's superseding claim construction. Defendants argue that claims 1, 2 and 5 are invalid as obvious over Nakamura, in combination with U.S. Patent No. 5,297,005 ("Gourdine"), or alternatively over U.S. Patent No. 4,243,307 ("Rizzuto"). Plaintiff filed a motion to strike defendants' revised final invalidity contentions and portions of defendants' summary judgment briefs referencing Rizzuto.

LEGAL STANDARD

I.     Summary Judgment

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see generally Anderson v.*

4

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-255 (1986).  A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 248.  The moving party bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  Fed R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 250.

II.   <u>Non-Obviousness</u>

     35 U.S.C. section 103(a) requires that a patent be non-obvious:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the manner in which the invention was made.

Once the patent issues, each claim in an issued patent is presumed valid.  35 U.S.C. § 282.  To prevail in invalidating a patent on the basis of obviousness, the moving party must prove obviousness by clear and convincing evidence.  *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003).

     The question of obviousness "is a question of law premised on underlying findings of fact." *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1332 (Fed. Cir. 2005) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).  These fact questions are: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) secondary evidence of non-obviousness.  *Graham*, 383 U.S. at 17-18; *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).  The relevant question "is not whether the combination was obvious to the patentee but whether the combination was obvious to a person with ordinary skill in the art."  *KSR*, 550 U.S. at 420.

     The "combination of familiar elements according to known methods" is likely to be obvious when it "does no more than yield predictable results."  *KSR*, 550 U.S. at 416.  If an ordinarily skilled artisan can implement a predictable variation of a work available in the same field of endeavor or a

5

United States District Court

For the Northern District of California

1  different one, section 103 likely bars patentability of the variation.  *Id.* at 417.  If, however, the prior

2  art teaches away from combining certain known elements, discovery of a successful means of

3  combining them is more likely to be non-obvious.  *Id.* at 416.  In assessing non-obviousness,

4  hindsight bias and *ex post* reasoning are to be avoided.  *Id.* at 421.

5        To determine the issue of non-obviousness, it will often be necessary for a court "to look to

6  interrelated teachings of multiple patents; the effects of demands known to the design community or

7  present in the marketplace; and the background knowledge possessed by a person having ordinary

8  skill in the art," in order to determine "whether there was an apparent reason to combine the known

9  elements in the fashion claimed by the patent at issue."  *KSR*, 550 U.S. at 418.  To facilitate review,

10 the trial court's analysis should be made explicit.  *Id.*  However, the analysis "need not seek out

11 precise teachings directed to the specific subject matter of the challenged claim, for a court can take

12 account of the inferences and creative steps that a person of ordinary skill in the art would employ."

13 *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1262 (Fed. Cir. 2007) (quoting *KSR*, 550 U.S. at 418).

14 "[T]he common sense of those skilled in the art demonstrates why some combinations would have

15 been obvious where others would not."  *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157,

16 1161 (Fed. Cir. 2007).

17       "[I]n appropriate cases, the ultimate inference as to the existence of a motivation to combine

18 references may boil down to a question of 'common sense,' appropriate for resolution on summary

19 judgment."  *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1240 (Fed. Cir. 2010).  Summary judgment is

20 appropriate where the content of the prior art, the scope of the patent claim and the level of ordinary

21 skill in the art are not in material dispute.  *KSR*, 550 U.S. at 427.

22

23 DISCUSSION

24 I.    Nakamura in Combination with Gourdine

25       A.    Claims 1 and 2

26       With the exception of the "directly conducts cooling air" element, the court has already

27 found that Nakamura discloses every limitation of claim 1 of the '158 patent.  The Federal Circuit

28
                                              6

**United States District Court**
For the Northern District of California

did not disturb these findings.  Nevertheless, plaintiff again argues that Nakamura did not inherently

disclose a ventilating path inside a power supply unit.  Although plaintiff expands upon the

argument it previously made before the court, *compare* Opp. at 10-13 *with* Docket No. 279 at 13-14,

it has provided no compelling reason for the court to reconsider its earlier decision rejecting this

argument.  *See* Docket No. 373 at 10-11; *see also United States v. Alexander*, 106 F.3d 874, 876 (9th

Cir. 1997) (stating that a court abuses its discretion in failing to apply law of the case doctrine unless

"1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the

evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest

injustice would otherwise result").

The sole issue at this juncture is whether it would have been obvious to modify Nakamura by

adding a dedicated cooling path between the outside of the projector case and the power supply

housing.  Defendants argue that Gourdine discloses this modification.  Gourdine was filed on

September 28, 1992 and issued on March 22, 1994 and is therefore prior art to the '158 patent.  *See*

Biber Decl. at Exh. E.  Gourdine relates to an apparatus and method for cooling electronic heat

generating components in a cabinet, specifically by isolating predetermined components and cooling

those components through an independent secondary air flow.   The primary airflow cools various

non-isolated components in the cabinet and is then exhausted by an exhaust fan.  The secondary

airflow passes from the exterior of the cabinet, through a flexible conduit, and into a hollow housing

for a heat-generating electrical component.  The secondary airflow is then exhausted from the

housing through another flexible conduit and the exhaust fan.  Gourdine is directed to solving heat

problems within personal computers, and the preferred embodiment describes isolating and cooling

an Intel 80486 microprocessor chip.  Unlike Nakamura, Gourdine describes that "the heat generated

by the isolated components and non-isolated components is not mixed within the cabinet to

maximize cooling of all components within the cabinet."  *Id*. at 1:19-22.

Although Gourdine is directed to personal computers and the '158 patent is directed to

projectors, there is no genuine dispute that Gourdine is analogous art to the '158 patent.  Plaintiff's

expert stated in his 2008 declaration that, "[t]here are similarities in the cooling issues in computers

United States District Court

For the Northern District of California

1   and projectors, and the ways of addressing those issues," Docket No. 242 at ¶ 9, and at his 2010

2   deposition stated that "I still believe it is correct."  Docket No. 410 (Huang Decl.), Exh. 6 (Keller

3   Tr.) at 32:10.  Plaintiff does argue, however, that a person of ordinary skill would not be motivated

4   to combine Gourdine with Nakamura, because doing so would be inconsistent with the respective

5   purposes of each invention and would yield unpredictable results.  These arguments are meritless.

6          Plaintiff points out that the goal of Nakamura is to produce a projector that uses fewer intake

7   and exhaust ports than the number of cooling fans used.  *See* Biber Decl, Exh. D.  The prior art

8   projector addressed by Nakamura contained two exhaust ports, which imposed design restrictions,

9   required installation in a location without obstructions next to each port, and created high fan noise

10  levels.  *Id.*  Nakamura addressed each of these problems by providing a single exhaust port and

11  using the same airflow to cool the power supply and the lamp.  Plaintiff argues that isolating the

12  power supply as taught by Gourdine would potentially undermine Nakamura's intended purpose in

13  at least two ways: (1) the isolation of the secondary cooling path would result in the loss of some

14  cooling air for the fan, requiring the use of a stronger, noisier exhaust fan or "other changes to the

15  projector to compensate for the loss of cooling air," Docket No. 405 (Opp.) at 7; and (2) Gourdine

16  discloses the use of an exhaust fan housing so as to provide sufficient vacuum for the secondary air

17  path, thereby constraining design (i.e. a bulky housing requires a bigger projector) or requiring a

18  noisier fan to maintain sufficient vacuum pressure.  *Id.* at 7-8.

19         With regard to Gourdine, plaintiff points out that Gourdine is concerned particularly with the

20  cooling of a microprocessor chip within a computer case, because that component is most sensitive

21  to temperature issues and also generates the most heat.  The power unit in the '158 patent, by

22  contrast, is not the greatest heat producer in the projector (the liquid crystal display is) and plaintiff

23  argues that a person of ordinary skill would apply Gourdine by isolating the liquid crystal display

24  and/or the lamp, not the power supply.  Additionally, plaintiff argues that isolating the power unit

25  via the concepts taught by Gourdine would yield unpredictable results, because the disclosed Intel

26  80486 chip only generate 4.5 watts, far less than the 25 to 60 watts of waste heat estimated by

27  plaintiff's expert.  Opp. at 9; Keller Decl. ¶ 63.2.  Plaintiff points out that defendants' expert

28

8

United States District Court

For the Northern District of California

1  specifically testified that she might need to make the duct larger than in Gourdine to arrive at the

2  optimal airflow.

3         Although plaintiff has provided examples of how a literal combination of Gourdine and

4  Nakamura might not further the particular goals stated by each reference, neither reference "teaches

5  away" from the combination.  "A reference may be said to teach away when a person of ordinary

6  skill, upon reading the reference, would be discouraged from following the path set out in the

7  reference, or would be led in a direction divergent from the path that was taken by the applicant . . .

8  A reference does not teach away, however, if it merely expresses a general preference for an

9  alternative invention but does not 'criticize, discredit, or otherwise discourage' investigation into the

10  invention claimed." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1327

11  (Fed. Cir. 2009) (citations omitted).  For example, in *DePuy Spine*, defendant argued that a patent

12  was obvious over a combination of two prior art references, one of which disclosed the use of a rigid

13  screw in a spinal surgical device.  *Id.* at 1324-26.  The other prior art reference, however, expressly

14  warned that such a rigid screw would likely fall off within a human body, thereby discouraging the

15  proffered prior art combination.  *Id.*  By contrast, there is nothing in Nakamura that discourages the

16  use of a dedicated secondary cooling path for the power supply.  Nakamura is simply directed at a

17  different problem presented by the prior art projectors than the problem addressed by the '158

18  patent.  *See KSR*, 550 U.S. at 420; *In re Translogic Tech., Inc.*,  504 F.3d 1249, 1259 (Fed. Cir.

19  2007) ("In the context of *KSR*, the Asano teachings and its obvious variants were relevant prior art,

20  even if that patent did address a different problem.").  The '158 patent is aimed at more efficiently

21  cooling a power supply in the midst of other heat-generating projector components, and Nakamura

22  does not "criticize, discredit or otherwise discourage" looking to the teachings Gourdine to solve this

23  problem.

24         Moreover, the fact that Gourdine describes isolating the hottest component with a dedicated

25  cooling air path does not render it nonobvious to apply this cooling technique to another heat-

26  generating component like a power supply.  The problem addressed by the '158 patent is that the

27  power supply in the prior art projectors was inefficiently cooled because the air had *already* passed

28

9

through and been warmed by other heat-generating components.  Biber Decl., Exh. B. at 2:26-31.  In other words, the problem articulated by the '158 patent was not that the hottest components were insufficiently cooled, but rather that the air was too warm after cooling those units to efficiently cool the power supply.  Gourdine teaches a manner of increasing the flow of cool, fresh air to a predetermined component, and this need was presented by prior art projectors.  Regarding the unpredictability of applying Gourdine to a component that generates more than the 4.5 watts of heat, the Gourdine specification envisions application of the invention to chips generating heat in the range of 15-30 watts, overlapping with plaintiff's heat-generating estimate for the projector power supply.  Biber Exh. E at 1:38.  Moreover, Gourdine does not limit its teachings to this range of heat generation.

Plaintiff's nonobviousness arguments too narrowly focus on what would result from a literal fusion of the preferred embodiments disclosed in Nakamura and Gourdine.  It may be the case that isolating the secondary cooling path could potentially divert cooling air from the lamp described in Nakamura, or that the installation of an exhaust fan housing would add bulk to the projector, or that the increased heat from the power supply would require a duct larger than shown in Gourdine.  The obviousness inquiry, however, looks more broadly at whether a projector designer of ordinary skill "facing the wide range of needs created by developments in the field of endeavor, would have seen a benefit" to installing a dedicated air path to better cool the power supply.  *KSR*, 550 U.S. at 424.  Gourdine's teaching that isolating a predetermined heat-generating component improves cooling of that component has obvious benefit for a projector designer looking to more efficiently cool the projector power supply.  Some alterations might be necessitated in applying Gourdine's teachings to the projector disclosed by Nakamura, but "a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle."  *Id*. at 420.  This court previously observed that "[s]eeking to increase the efficiency of cooling a power unit by arranging a prior art design with air ducts such that an air duct goes directly through the power unit is obvious under the 'obvious to try' rationale approved by the Supreme Court and the Federal Circuit."  Docket No. 373 at 16 (citing *In re Kubin*, 561 F.3d 1351, 1359 (Fed. Cir. 2009)).  Gourdine buttresses this

1    conclusion by demonstrating that directing a cooling air passageway through a dedicated housing

2    unit is not merely "obvious to try," but also expressly disclosed in the prior art.

3           The court concludes, as a matter of law, that claim 1 and its dependent claim 2 are obvious in

4    light of Nakamura and Gourdine.

5           B.    Claim 5

6           Claim 5 differs from claim 1 in that claim 5's power unit includes "an air inlet and an air

7    outlet" rather than a "ventilating path," and that claim 5's "second cooling air intake port" element

8    recites only an air inlet and no ventilating path or duct.  In its May 15, 2009 memorandum and order,

9    the court concluded that these elements of claim 5 were present in Nakamura.  Docket No. 373 at 13.

10   The court did find that there was a genuine issue of material fact as to whether Nakamura disclosed

11   the third element present only in claim 5, namely "an exhaust vent provided on the outer case that

12   directly conducts air exhausted from the air outlet to the outside of the outer case."  *Id*.  Nonetheless,

13   the court found claim 5 to be obvious in light of Nakamura, even though the prior art advanced by

14   defendants did not disclose this final limitation.  *Id*.

15          Although the Federal Circuit did not disturb this aspect of the court's earlier ruling, the court

16   notes that its finding of obviousness with regard to claim 5 is further strengthened by the

17   combination of Nakamura and Gourdine.  Gourdine describes using a conduit to directly exhaust the

18   secondary air flow to the exterior of the cabinet.  As discussed above, it would be obvious to a

19   person of ordinary skill to combine the teachings of Gourdine with the projector disclosed by

20   Nakamura.  Plaintiff proffers no argument why claim 5 should be treated differently than claim 1 in

21   this regard, and the court similarly concludes that claim 5 is obvious as a matter of law.

22

23   III.    Rizzuto/Motion to Strike

24          Because the court determines that claims 1, 2 and 5 are obvious in light of Nakamura and

25   Gourdine, it need not address defendants' arguments regarding Rizzuto.  Accordingly, it also need

26   not address plaintiff's motion to strike defendants' revised invalidity contentions or the portions of

27   their summary judgment briefs addressing Rizzuto.

28

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1

2   CONCLUSION

3          For the reasons stated above, defendants' motion to invalidate claims 1, 2 and 5 of the '158

4   patent is GRANTED on the basis of obviousness.

5

6          IT IS SO ORDERED.

7

8   Dated: November 22, 2010 _____

9                                        MARILYN HALL PATEL
                                         United States District Court Judge
                                         Northern District of California

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                              12